WILLIAM DE FOREST MANICE and BENJAMIN C. WETMORE, in their respective individual capacity, and as executors of the last will and testament of DE FOREST MANICE, deceased, Respondents, v. CATHARINE MARIA MANICE et al.

Same v. DE FOREST GRANT et al., and two other cases.

(GENERAL TERM, FIRST DISTRICT, NOVEMBER, 1869.)

The residuary clause of a will gave the rest, &c., of the estate, real and personal, to executors in trust, to collect the income and apply the same, during the life of the testator's widow, to certain specified purposes; and upon her death, all said estate, except a house, of which it directed a sale, was to be appraised by three persons; one to be chosen by the executors, one by the surrogate of the county of New York, and a third by the persons so selected; and the aggregate amount of such appraisal, together with the proceeds of the sale of such real estate, and all other assets then belonging to the testator's estate, was to be divided into twelve equal parts, which were to be distributed as further provided.

The said clause also provided for the ·conveyance and transfer of three of the twelfth parts to the testator's son, to whom said parts were given; or in case of said son's death, to his then living lawful issue; with the like provision for another son; and, also, in case of the death of either of said sons, prior to such division, leaving no lawful issue living at the time of such division, then the surviving son, or in case of his death, his lawful issue, to take the share of the deceased son.

The said clause also provided that, as to two of the remaining twelfth parts of said residuary estate, the executors were to retain and hold the same (and said parts were given and devised to them accordingly and were to include certain specified real estate at the appraised value; the residue, to be made up of personal estate at the appraised value), in trust to pay over the net income to the use of the testator's daughter during life; and after her death, or after the time of said distribution, in case she should have previously died, to divide the said two twelfth parts into as many shares as there might be children of said daughter living at her decease, and to retain one of said shares for each of said children, and accumulate the net income during the minority of such children respectively, and to pay the same to them at their majorities, with the accumulations, no further

Manice · v. Manice.

provision being made respecting the vesting of said shares, in the event of the death of the testator's daughter before the division, with like provision for two other daughters respectively.

*Held*, That the clause intending to vest the *corpus* of the residuary estate in the executors, as trustees, to hold and carry from and after the death of the widow, to the time of the distribution, was *pro tanto* void, as suspending the absolute ownership and power of alienation thereof beyond the period permitted by the Revised Statutes.

That the gifts, to the testator's sons and to his son's issue, were both contingent, neither of them being intended to vest before the actual division of the residuary estate, and that they were void in their creation.

That the ulterior executory gifts of the other half of the residuary estate, were also contingent and void in their creation.

That the directions for appraisal, division, conveyance, &c., could not be, considered powers in trust for partition; but that the plain intent of the whole residuary clause was, that the executors should, on the testator's death, take, hold and carry the *corpus* of the residuary estate, until the directed division of it and its directed or implied accumulations, after the death of the widow and after the directed appraisal should actually take place.

The said clause also first provided for the disposition, by the executors, of the net income of the said residuary estate given to them in trust, after payment of annuities to the testator's widow and mother, in the payment of an annuity to each of the testator's children, during the life of said widow, and the application of the surplus to the *pro rata* payment of certain legacies bequeathed in previous clauses of the will; and if after such payments there should be a further surplus, the same was to be divided into two parts; one of which parts was to be invested, and to accumulate during the life of the widow ; and the other to be subdivided into eighteen parts, of which six were to go to the widow ; three to each of the testator's sons, and two to each of his daughters.—*Held*, that in addition to an unlawful accumulation of the one-half of such surplus during the life of the widow, the directions for payment of annuities to the testator's children during the widow's life, and for the payment to said children of the eighteenth parts of the surplus income (required also to be made during the life of the widow), no provision being made for disposition of the said children's annuities, and the said eighteenth parts, on the decease of said children, with or without issue, before death of the widow, until after the widow's death, were made in view of the whole clause, with the intention by the testator, that on the happening of the latter event (the decease of his children, with or without issue, before his widow), the said eighteenth parts of the surplus income appropriated to, and the said annuities of, said children, should fall under the provisions of the residuary clause. and accumulate until the distribution therein provided for.

That if the trust were valid, as vesting in the trustees the residuary estate till the death of the widow, as the testator's children might

die before the widow, the testator's mother being dead, the trus' might become a trust for receiving annually the income of the residuary estate, for the purpose of paying thereout the provisions for the widow, and for paying the remainder of the income to whoever might be entitled, on the theory that the testator had not made any valid testamentary disposition of it; as it could not be lawfully accumulated under the express and implied trusts for accumulation, and there was no person entitled, under the will, to any eventual estate in the subject of the trust to whom it could go under 1 R. S., 726, § 40.

That the provision did not warrant the view that the testator intended, on the death of either daughter without issue, before the division, that his heirs at law should take any vested estate in said two twelfths.

An express, active trust of real estate may be invalid and void by the Revised Statutes, though it may not, if valid, unlawfully suspend the absolute power of alienation of the subject of it.

And it seems, in case it had been provided, that on the decease of either of the testator's children leaving issue, before his widow, the trustees should apply, &c., or pay over to said issue thereafter, during the life of the widow, the like annuity and part of one-half of the surplus income, the child so dying had received, or was to receive; the trust could not have been held valid.

It seems also, the trust to receive, &c., and pay over to the testator's children during the life of his widow was invalid.

And assuming the purpose of the trust as to the widow to have been lawful and authorized; and whether the purpose of the trust for the testator's children were lawful or not; in view of the contingencies, and difficulties, to which the feature of the trust scheme last mentioned exposed it, and its connection with the express and implied purposes of unlawful accumulations, the impossibility of saying that the trustees as such under the trust, as a trust vesting in them the whole residuary estate during the life of the widow, could lawfully hold the whole of it, and receive the income of the whole of it, for the purpose of paying over a small part of the income to the testator's widow and children under the trust scheme, and the balance of it to the testator's heirs-at-law and next of kin, as undisposed of by him; and considering, also, the intended entirety of the *corpus* of the residuary estate during the life of the widow, and until the directed division of it with its accumulations; and the impossibility, without the exercise of arbitrary discretion, of determining as to what part or how much of the residuary estate the trust scheme should be deemed valid, as vesting an estate in the trustees as such, *pro tanto*, for the lawful purposes of the trust during the life of the widow; and considering the invalidity and voidness of the ulterior and executory dispositions of the residuary estate, with its accumulations, with a view to which ulterior and executory dispositions it was to be presumed the first part of the trust scheme during the life of the widow, with its express and implied trusts, for accumulations of income, was framed.—*Held*, the whole trust scheme must fail, and in respect to his

residuary estate, which the testator intended to dispose of by such residuary clause, he must be deemed not to have made any valid testamentary disposition thereof, or of its accumulations, unless the intended disposition and purposes could be carried out, through or by the execution of the trust directions or powers, viewed only as powers in trust.

*Held*, further, that the trust provisions, so far as they might be considered powers in trust, failed also.

*Held* further, that notwithstanding the failure of directions to pay them out of the income of a certain portion of the testator's estate, general legacies bequeathed in previous clauses of the will, were payable out of the general assets in the hands of the executors as executors; and that a bequest expressly payable out of the trust residuary estate, on the death of the widow, did not abate by the failure of the trust scheme, and might be viewed as a general pecuniary legacy, and paid, or its payment, on the death of the widow might be provided for, out of the general assets; and so, also, taxes, &c., on premises given to the widow for life; but otherwise, as to the annuities, and further gifts out of the income of the trust residuary estate, which were presumptively given on the theory, that the testator supposed he was making valid disposition of all his residuary estate.

*Held*, further, that the widow's annuity having abated, any election by her to take the provisions of the will in lieu of dower, should not impair or affect her right thereto in the residuary real estate.

One of the testator's daughters being deceased intestate, having died after the testator, and while a resident of Connecticut, and leaving a husband and children surviving her; and said husband having obtained letters of administration in New York, and being a party to actions for construction of the will, &c., before the court for determination, and plaintiff in one of said actions, and it appearing, that by the law of Connecticut, he was entitled to a life estate only in the personal estate of his deceased wife, and her children to the remainder.—*Held*, security should be required of him before such estate should be placed in his hands.

A legacy being given to the treasurer of Yale College, for the trustees thereof, with directions for investment and accumulation, for educational purposes, it was held that the bequest should be paid, and that the question, whether the fund could be administered, and interest accumulated as directed, must be determined by the courts of Connecticut.

THESE cases came before the General Term, on appeals from a judgment entered at a Special Term.

The judgment declared the construction of a will made by De Forest Manice, deceased. It annulled a part thereof as void; but established its principal trusts and dispositions, and gave directions for carrying them into execution.

Manice v. Manice.

The following is a statement of the important provisions of the will:

Interbracketed words are inserted to abridge the statement or to develop the evident meaning.

  *    *    *    * ·    *    *    *

*Second*—I give my wife my city residence and stable for life.

  *    *    *    *    *    *    *

*Sixth*—I give unto my two sons [particularly described], lots of land in the city of New York, during their respective lives. · In case either die, no issue, him surviving, the survivor shall have the share of the one so dying, during his life.

Upon the death of either leaving [such] issue, such issue shall take, in fee-simple, the share of the one so dying. In case but one shall die, leaving [such] issue, then, upon the death of the last survivor of my two sons, such issue shall have [all the] lots in fee-simple. In case of the death of both, leaving no [such] issue, then, upon the death of the last survivor, said lots shall vest in my heirs-at-law, as if I [had] died intestate.

I authorize my sons, and the survivor of them, to make leases of said [lots] for any term not exceeding twenty-one years, at such rent as they shall see fit; and [with] covenants of renewal for any further term not exceeding twenty-one years, at a rent to be ascertained and fixed by appraisement, in the usual way, upon condition that the lessee or lessees shall build, etc.

  *    *    *    *    * ·    *    *

*Thirteenth*—I give to Susan T. Walker $3,000.

*Fourteenth*—I give to Margaret Olmstead $3,000.

*Fifteenth*—I give to Eliza De Forest, Sarah De Forest and Mary Cannon $1,000 each; and I direct that the legacies given in this and in the 13th and 14th clauses, be paid, *pro rata;* as fast as the net income of my residuary estate will allow, after paying the $16,200 per annum, as hereinafter directed.

*Sixteenth*—The residue I give unto my executors in trust: To keep invested the personal property, or the proceeds

thereof; and in case of the sale of any real estate, as herein after provided, to invest the proceeds thereof in the same manner; to let or lease the real estate, or any part thereof, during the lifetime of my wife, for terms not exceeding five years; to sell any or all my real estate, not herein specifically devised, at such time or times as they shall deem beneficial and advantageous to my estate; and to receive the rents and interest of said residuary real and personal estate, and to apply the same during the lifetime of my wife, as follows:

To pay all taxes, assessments, and Croton water rents, and for premiums of insurance, and keeping my improved property in ordinary repair, and all other necessary expenses in the management of my estate; and to apply the net residue of the income as follows:

To pay my wife $8,000 per annum, in quarter-yearly payments, commencing from the day of my death, during her natural life.

To pay to my mother $700 per annum, in quarter-yearly payments, from the day of my death; and I order and direct my said mother to pay $100 of said annuity, annually, to her sister, Sarah Marks.

To pay to each of my children $1,500 per annum, in quarter-yearly payments, during the lifetime of my said wife.

If, by any disaster, the said net annual income of my residuary estate shall fall below $16,200, the aggregate, etc., such deficiency shall be taken off from the annual allowance to my children, *pro rata*, until their respective allowances shall be reduced to $1,000 per annum; and any further deduction shall be taken from the allowance to my wife.

In case the said annual income shall exceed $16,200, then out of such surplus are to be paid, *pro rata*, the legacies in clauses 13th, 14th and 15th.

And in case there shall still remain a surplus of said income, the same is to be divided into two parts, one of said parts to be invested, and to accumulate during the lifetime of my said wife; and the other part to divide into eighteen parts, and to pay six of said eighteen parts to my said wife, three of said

eighteen parts to each of my said sons, and two of said eighteen parts to each of my said daughters.

*And upon the further trust,* upon the death of my said wife, in case the legacies given in the 13th 14th, and 15th clauses shall not have been paid in full, to pay what shall remain unpaid thereof out of my estate ; and also to pay thereout the sum of $5,000 over to the treasurer, for the time being, of Yale College, in New Haven ; which sum I request the trustees of said college to invest in city or State of New York securities, or upon bond and mortgage on productive real estate in the city of New York, and accumulate the interest until the principal and interest shall amount to the sum of $30,000, and thereafter use and apply so much of the interest of said fund, when required so to do, as will educate continuously one person, who shall bear my paternal name and be a lineal descendant of mine, in all their courses, collegiate and scientific.

*And upon the further trust,* upon the death of my said wife, to cause to be appraised by three competent persons, one to be chosen by my executors, one by the surrogate for the county of New York, and the third by the two so chosen, all my residuary personal estate and the securities in which the same shall be invested, and also all my residuary real estate (excepting that herein before specifically devised to my sons [and wife]), and to sell the house and stable [devised to the wife for life] ; and the aggregate amount of such appraisals of such personal and real estate, and proceeds of the sales of such real estate, and all other assets then belonging to my estate, to divide into twelve equal parts ; and, in case it shall become necessary for such division, to convert into cash any such personal estate or securities as they may see fit, and the proceeds of such sales to stand in the place of the appraised value of such securities in making up the amount of the personal estate.

*And upon the further trust,* to convey, transfer, and pay over to my son, William, in fee-simple, to whom I give the same, or in case of his death, to his then living, lawful issue,

Manice v. Manice.

three of said equal twelfth parts; which said three parts, so to be conveyed to him or to his issue, shall include the following real estate [specially prescribed] at the value at which the same shall be appraised, as aforesaid, the same to be free from incumbrance; and the residue to be made up out of the personal estate at the appraised valuation aforesaid.

*And upon the further trust*, to convey, transfer and pay over to my son, Edward [precisely as in William's case, certain other real estate, the same being specially described].

In case either of my sons die prior to such division, leaving no lawful issue living at the time of such division, then my surviving son, or in case of his death his lawful issue then living, shall take the share of the deceased son.

*And upon the further trust*, to retain and hold, as trustees, under this my will, and I give, devise and bequeath the same to them accordingly, two other of said equal twelfth parts; which shall include the following real estate at the value at which the same shall be appraised as aforesaid, that is to say: [specially describing certain real estate], and the residue to be made up out of the personal estate at the appraised value aforesaid; in trust to keep invested the personal property; to let or lease the real estate, and receive the rents thereof, and after paying taxes and assessments, and expenses for repairs, insurance, and other incidental expenses, to apply the net income of said real and personal estate so held in trust, half yearly, or as the same may be received, to the use of my daughter, Mary C. Lockwood, for and during her natural life; and after her death, or after the time of said distribution, in case she shall have previously died, to divide the said two twelfth parts into as many shares as there shall be children of my said daughter living at her decease, and to retain one of said shares for each of said children, and to accumulate the net income thereof during his or her minority, and on his or her arrival at the age of twenty-one years, to pay him or her the same, with its accumulations; provided, however, that in case either of said children shall, during his or her minority, be in need of any portion of said income for his or her support, my said

trustees are authorized to apply the same; and provided that in case of the death of either leaving lawful issue; and in case of his or her death, during minority, without leaving lawful issue, then such share is to be paid to the survivors of said children. And in case of default of issue of my said daughter, then to convey, transfer and pay over the said two twelfths to my heirs-at-law, in such shares and proportions as, by the present laws of the State of New York, they would take and inherit real estate of which I died seized and intestate.

[Here follow provisions in the same precise terms for each of the other two daughters and her issue, the only difference being in the specific real estate thrown into each portion.]

Providing, however, that in case either of my said daughters shall die unmarried, and without leaving lawful issue her surviving, [her] appointment disposing of [her aforesaid] share [shall be effectual].

And in case, at the time of such division, there shall remain unsold any vacant lots of land, and my said executors shall deem it more beneficial for my children, that the same be divided among them rather than sold, then I authorize such remaining vacant lots to be appraised as aforesaid, and to be apportioned among the shares aforesaid, in the same manner as their proceeds would have been apportioned by virtue of this my will, had the same been sold; such of said vacant lots as shall be allotted to my daughters, to be subject to the trusts hereinbefore named, with power to the trustees to sell the same whenever they shall see fit, and to invest the proceeds on bond and mortgage on productive real estate in the city of New York.

*Seventeenth*—In case my mother shall survive my wife, then I charge the annuity given to my mother, upon the shares of my residuary estate given to my sons, and I order and direct that they pay the same to her, quarter-yearly, during her natural life.

*Eighteenth*—I declare that what I have given to and for my wife, are to be taken by her in lieu of dower.

And I further declare, that the provisions for my said

daughters are not to be subject to the control or interference or liabilities of any husband either of them may at any time have.

And wherever I have devised or bequeathed to the issue of any child of mine, such issue, if more than one, if standing in different degrees of relationship to such child, are to take by representation.

*Nineteenth*—I hereby appoint * * * * executors and trustees of this, my last will and testament ; authorizing them to compromise with any or all of my debtors, and to submit to arbitration any and all disputes or controversies which shall or may arise in the settlement of my estate ; and I further authorize them, in case of the damage or destruction by fire, of any building or buildings on any of my property, either prior to the division, or such as they shall hold in trust after such division, to rebuild the same ; and in case the amount received upon the policy or policies of insurance shall not be sufficient for that purpose, to use any funds belonging to the estate, if such damage or destruction shall occur prior to such division, or any funds belonging to the particular trust, if the same shall occur after such division ; and in case such fund shall not be sufficient, then to execute and deliver to any person or persons, or body corporate, who will loan the same, a mortgage upon the premises upon which the building or buildings so damaged or destroyed were situated, for an amount which shall be sufficient to complete and finish such building or buildings.

*Chas. O'Conor* for the executors, and William De Forest Manice, and Edward A. Manice.

*Marshall S. Bidwell,* for Frances I. M. Smith, and J. Tuttle Smith.

*Edwin W. Stoughton,* for Caroline A. Grant and Gabriel Grant.

*Wm. Henry Arnoux,* for Wm. B. E. Lockwood, administrator, &c.

*Wm. R. Darling*, guardian *ad litem*, for Chas. M. Grant, and De Forest Grant.

*Charles F. Sanford*, guardian *ad litem*, for Manice D. F. Lockwood, Buckingham Lockwood, and Wm. B. E. Lockwood, Jr.

*Geo. Wm. Wright*, for F. N. Dodge, guardian *ad litem*, for B. M. Smith.

*Chas. H. Tweed*, for the president, &c., of Yale College.

Present—CLERKE, CARDOZO and SUTHERLAND, JJ.

By the Court—SUTHERLAND, J. It may be said that these actions were all brought for the purpose of having the construction, force and effect of the will of De Forest Manice judicially declared.

They were all tried together, and one judgment was rendered in all the cases. The case comes before the General Term on appeal, by certain defendants, from the judgment.

The testator died in this State, domiciled therein, April 18, 1862, leaving real estate of about the value of $1,400,000, and personal, exceeding in value $200,000, and leaving Catharine Maria, his widow, and his children, William De Forest Manice, Edward Augustus Manice, Mary C. Lockwood, then the wife of William B. E. Lockwood, Caroline A. Manice, now the wife of Gabriel Grant, Frances I. Manice, now the wife of James Tuttle Smith, his only next of kin and heirs-at-law. Mary C. Lockwood was married, in this State, in 1856, in the lifetime of her father, and shortly after her marriage, removing to the State of Connecticut, with her husband, she became, with him, a domiciled inhabitant of that State, and continued so until she died, the 10th of March, 1869, intestate, leaving her husband, William B. E. Lockwood, and three children, Manice De Forest, and Buckingham, born in the lifetime of her father, and William B. E. Lockwood, Jr., born since his death, her surviving, and since her death, letters of administration of

her goods, &c., have been issued to her said husband, by the surrogate of the county of New York.

The other two daughters of the testator have been married since his death, Caroline A. to Gabriel Grant, and Frances I. to James Tuttle Smith. Caroline A. has two children, and Frances I. one child.

Eunice Manice, the mother of the testator, to whom a life annuity is directed to be paid in the sixteenth clause of the will, died in October, 1863.

The value of the real estate disposed of by the will, otherwise than by the sixteenth clause, exceeds $500,000 ; the value of the other real estate left by the testator exceeds $900,000.

The money legacies given by the 9th, 10th and 11th clauses of the will, in the aggregate, amount to $700.

By the 12th clause a legacy of $100 is given to each of the testator's house servants.

The legacies mentioned in the 9th, 10th, 11th and 12th clauses are directed to be paid within three months after the testator's decease, and are the only money legacies mentioned in or given by the will which are not directed to be paid out of the income of the trust residuary real and personal estate, mentioned in the 16th clause of the will.

I infer from the proofs in this case, and the ninth finding of fact, that the income of the residuary real and personal estate mentioned in the 16th clause of the will and purporting to be thereby disposed of, was sufficient to pay the annuities or payments thereby directed to be paid during the life of the testator's widow, and also to pay the money legacies directed to be paid by the 13th, 14th and 15th clauses of the will, amounting in the aggregate to $9,000 ; and that the aggregate of the surplus income of such residuary estate for the second, third, fourth, fifth, sixth and seventh years after the death of the testator, after paying the annuities or annual payments directed to be paid by the 16th clause, during the life of the widow of the testator, amounts to the sum of $220,-000, one-half of which is by the 16th clause directed to be, and it is to be presumed has been, invested for accumulation.

It does not appear that the testator left any debts.

I have deemed the foregoing statement material but suffi-cient for stating intelligibly to any one who has read carefully the will, and especially the long and somewhat complicated 16th clause of the will, the material questions presented by the appeals, my conclusions, and the grounds of them.

The most important of these questions relate to the 16th clause of the will, and of these the most important and diffi-cult are not so much questions of construction, as questions whether the plain intention of the testator can lawfully be carried out, or carried into effect.

By the 16th clause the testator gives, devises and bequeaths to his executors and the survivors and survivor of them, all the rest, residue and remainder of his estate, real and personal, of every kind ; to collect and receive the rents, issues, income, dividends and interest thereof, and apply them during the lifetime of his widow.

1st. To the payment of taxes, &c.

2d. To the payment to his widow of $8,000 per annum, in quarterly payments, during her natural life.

3d. To the payment to his mother of $700 per annum, in quarterly payments.

4th. To the payment to each of his children of $1,500 per annum, in quarterly payments, *during the lifetime of his widow.*

5th. In case the annual income should exceed $16,200, the aggregate of the annuities, or annual payments, to be paid to his widow, mother and children ; then,

6th. To pay out of such surplus income the legacies given in the 13th, 14th and 15th clauses of the will, and if there should still remain a surplus of money, then,

7th. The same is to be divided into two parts, one of which is to be invested and accumulated during the lifetime of the widow, and the other to be divided into eighteen parts, six of which are to be paid to the widow, three to each of his sons, and two to each of his daughters.

On the death of the widow, whatever may remain unpaid of the legacies given in the thirteenth, fourteenth and fifteenth clauses, is to be paid, and also $5,000 to the treasurer, for the time being, of Yale College; and then the sixteenth clause declares the further trust, that upon the death of the widow, all the residuary personal estate, and the securities in which it shall be invested, and all the residuary real estate, except the house and lot No. 156 Madison avenue, and stable and lot 21 East 33d street (given by the second clause of the will, to the widow for life), shall be appraised by three persons, one to be chosen by the executors, one by the surrogate of the county of New York, and the third by the two so chosen; that the house and lot No. 156 Madison avenue, and the stable and lot 21 East 33d street, shall be sold and conveyed in fee simple, and that the aggregate amount of such appraisals of such personal and real estate, and of the proceeds of the sales of such real estate, and all other assets then belonging to the testator's estate, shall be divided into twelve equal parts.

The sixteenth clause then declares the further trust, that three of such equal twelfth parts, which said three parts shall include, *at its appraised value*, certain real estate, specifically described, shall be conveyed, transferred and paid over to his son, Wm. De Forest Manice; or, in case of his death (before the time of such distribution), to his *then living* lawful issue; and the testator gives, devises and bequeaths the same to his said son, or in case of his death (before such distribution), to his *then living* lawful issue.

The sixteenth clause then declares precisely the same trust, and has precisely the same provisions as to three other of said equal twelfth parts intended for his son, Edward Augustus, or in case of his death before the time of such distribution, for his issue *then* living; which three parts are to include certain other real estate, specifically described, *at its appraised value*.

Then follows this provision:

"And in case of the decease of either of my said sons prior to such division, leaving no lawful issue living at the time of such division, then my surviving son, or in case of his death,

his lawful issue, then living, shall take, receive, and inherit the share of the deceased son."

The declaration of trusts and provisions in the sixteenth clause, which then follow, as to two of said equal twelfth parts, intended to be disposed of contingently for the benefit of each of the testator's three daughters and their children, are more complicated, but the declarations and provisions as to each two parts, are in terms and effect precisely the same, the only difference being in the specified real estate included in the several two parts.

Look at those relating to the two parts intended contingently for the benefit of the testator's daughter, Mary, and her children.

The testator in effect, by them, attempts to create a new and contingent future active trust, as to such two parts, to commence and take effect *not on or from the death of his widow, but after her death upon and from the actual division of his residuary estate directed to be made after the appraisal.*

In the first instance, the testator in effect, upon and after the actual division, gives the two parts which are to include certain real estate, specifically described, at its appraised value, to his executors in trust for the use and benefit of his daughter Mary during her life; but then follows these words:

"And after her death, *or after the time of said distribution, in case she shall have previously died,* to divide the said two twelfth parts into as many shares as there shall be children of my said daughter living at her decease, and to retain one of said shares for each of said children, and to accumulate the net income thereof, during his or her minority; and on his or her arrival at the age of twenty-one years, to pay him or her the same, with its accumulations."

Then follow certain provisions, directing in case a child of his said daughter should die, leaving issue, the payment of such child's (testator's grandchild's) share to such issue; and in case of his or her (testator's grandchild's) death during minority, without lawful issue, directing the payment of such

child's (testator's grandchild's) share, to the survivors of the children of such daughter; and in case of default of issue of the testator's said daughter (after her death without issue and *after the directed division of the residuary estate*), directing the said two twelfths to be conveyed, transferred, and paid over to the testator's heirs-at-law in such shares, &c.

I deem it important to say, though in case of the death of the testator's daughter, Mary, before the time of distribution, the direction is to divide the two parts into as many equal parts as she left children living at the time of her decease; yet that I cannot find any gift to such children, or provision for them, before the time of distribution. I cannot find any words, or provisions which show that the testator intended, if his daughter, Mary, died before the directed division of his residuary estate, leaving children, that such children should take, or have, on the death of their mother, any vested estate or interest in the two parts, or any estate or interest, unless they survived the division of the residuary estate.

Perhaps the most peculiar feature of the sixteenth clause is, that by it, the ulterior disposition of the whole residuary estate, real and personal, with its accumulations (except so far as the bequest of $5,000 to the treasurer of Yale College, to be paid out of it, and the direction then to pay out of it, whatever may then remain unpaid of the legacies given in the thirteenth, fourteenth and fifteenth clauses, may be viewed as a disposition of a trifling portion of it), is postponed until after the death of the widow, and after the directed appraisal of it, and until the directed division of such residuary estate, with its accumulations actually takes place.

With the trifling exception aforesaid, there cannot be found in the sixteenth clause of the will, any gift or disposition of any part or share, or interest, vested or contingent, undivided, or otherwise, of such residuary estate, or of its accumulations, on the death of the widow.

It is plain, that the testator intended and expected, that by the sixteenth clause, his executors, as trustees, should and would, on his death, take, hold and carry, the *corpus* of all his resi·

duary estate, with its directed or implied accumulations (except as aforesaid), until the directed division of it, with its accumulations, after the death of his widow, and after the directed appraisal, actually took place.

It is plain, if the trust scheme of the sixteenth clause of the will is valid, *as vesting in the executors as trustees,* the *corpus* of the residuary estate, to hold and carry after the death of the widow, and until its actual division, that the *corpus* of the residuary estate will be thereby made inalienable after the death of the widow, and until the division actually takes place. (1 Rev. Stat., 729, § 60; 730, §§ 63, 65; *Hawley* v. *James,* 16 Wend., 121, 122; *Coster* v. *Lorillard,* 14 Wend., 303, &c.; *Hawley* v. *James,* 5 Paige, 445; *Williams* v. *Williams,* 8 N. Y., 531; *Harris* v. *Clark,* 7 N. Y., 242.)

I think it is plain, that neither the absolute power of alienation of the residuary real estate, nor the absolute ownership of the residuary personal property, could in this case lawfully be suspended from and after the death of the widow to the time of the distribution or actual division. (See 1 R. S., 723, §§ 14, 15; 1 id., 773, §§ 1, 2, and the cases before cited.)

If so, it follows that the trust scheme as vesting, or intending to vest, the *corpus* of the residuary estate in the executors as trustees, to hold and carry from and after the death of the widow, to the time of the distribution or actual division, is *pro tanto* void.

It would be sufficient to say in this case, on this point, that the actual division of the residuary estate directed in the sixteenth clause, *may not* take place at the termination of the life of the widow. But the children of the testator and their children may all die before the widow, and the directed division cannot be made for sometime after the death of the widow.

And it can be said further, that it is plain that it cannot be made as directed in the sixteenth clause of the will, for an indefinite period after the death of the widow, and that such period is not measured or limited by the existence of a life or lives in being at the death of the testator.

The appraisal is directed to be made upon the death of the widow; and if it is ever made as *directed and required*, it will take time.

The house and lot 156 Madison avenue, and the stable and lot 21 East Thirty-third street, are to be sold and conveyed by the trustees after the death of the widow, and not before, and this will take time.

The division of the aggregate of the appraisals and of the proceeds of the sales of the house and lot, and stable and lot, and of all the other assets, cannot be made until after the appraisal and the sales of the house and lot, &c., and may take considerable time.

The drafter of the trust scheme, in the sixteenth clause of this will, I think had no right to assume, as he probably did assume, that any one whose duty it might be to pass judicially upon the question of the validity of it, could and would con- sider the ulterior dispositions of the equal parts of the residuary estate by the appraisal, resulting from the actual division, as taking effect, or intended to take effect, on the death of the widow.

I cannot ignore the fact, that these executory dispositions, if they ever take effect, as vesting an estate or interest, cannot so take effect for an indefinite period after the death of the widow, nor until the actual division.

I cannot ignore the fact, that the words and provisions of the sixteenth clause of the will, relating to these executory dis- positions, are to the effect, that if they ever take effect, as giving vested rights or interests, they must so take effect at the time of distribution, or of the actual division, and not on the death of the widow.

If it should be assumed that the surrogate would willingly and promptly choose an appraiser, and that the appraisal would be made within a reasonable time after the death of the widow, and that the division would be made within a reason- able time after the appraisal, yet how can a transaction which is to take place in a reasonable time, or some time *after* the

death of the widow, be considered as taking place on her death?

The estate of the trustees under the trust prior to the division, if they took any, could not be called a future estate, nor, perhaps, can a trust be called a condition or limitation within 1 Rev. Stat., 723, §§ 13, 14, 15; 773, § 1. But these provisions of the Revised Statutes declare a rule of public policy, and a trust which, if valid, will cause a suspension of the absolute alienability of property in conflict with the rule and with the policy of the rule, must be void.

I would say further on the question as to the validity *pro tanto* of the trust scheme, as vesting the residuary estate in the executors, as trustees, to be held and carried by them after the death of the widow, till the directed actual division, that the Revised Statutes do not authorize an express trust of real estate *vesting an estate in the trustee*, that the trustee may convey it to, or divide it among, devisees. (1 R. S., 728, § 55; 1 R. S., 729, § 58; *Boynton* v. *Hoyt*, 1 Denio, 53; *Hawley* v. *James*, 16 Wend., 114; *Lang* v. *Ropke*, 5 Sandf. S. C. R., 363.)

But perhaps the most destructive feature of the sixteenth clause of the will is, that the executory dispositions of the residuary estate, on and after the directed actual division of it, if valid, must necessarily suspend the absolute right or power of disposition of the *corpus*, or capital of the whole of it, from the death of the testator, during the lifetime of the widow, and after her death for an indefinite period, and until the actual division of it shall take place.

I think I have shown that such suspension would be illegal; and therefore, these executory dispositions must all be declared void, void "*in their creation.*" (See the provisions of the Revised Statutes and cases before referred to.)

The executory gifts to the sons and to their issue, are plainly contingent.

Look at the wording of the gifts to the testator's son, Edward Augustus, "or in case of his death prior, &c., to his *then* (that is time of distribution or actual division) lawful issue." The gifts are so worded, as to be, in effect, a gift to

Manice *v.* Manice.

the son, *if* he survives the actual division; or if he does not, then a gift to such issue of his that he may have left, as survive the actual division.

The gifts are not to the son; and in case of his death before the actual division, leaving issue, to his, or to such issue. Had this been the gift, or the wording of the gift, it might possibly have been said, that the son, on the death of the testator, took, and has a vested estate or interest in the subject of the gift, or a vested right to the subject of it, liable to be defeated by his death before the actual division. But if he so took and has such vested estate, interest or right, it can only be defeated by the gift to his issue taking effect and vesting on the son's death before the actual division, leaving issue; but the gift to the issue cannot vest *then*, for the gift to the issue of the son dying before the division, is to the issue of such son, *living at the time of the actual division*, and not to the issue of such son, living at the decease of such son. In effect, the gift to the issue, is a gift to such issue as live till the actual division.

The further provisions relating to the gifts to both sons and their issue, to wit: "And in case of the decease of either of my sons, prior to such division, *leaving no lawful issue living at the time of such division*, then my surviving son; or in case of his death, his lawful issue, *then* living, shall take," &c., would seem to leave no room for doubt, that the executory gifts to the testator's son, Edward Augustus, and to his issue, are both contingent, that neither can vest before the actual division of the residuary estate. These gifts are, in fact, alternative executory gifts or limitations, which, at common law, would have been called executory gifts or limitations, contingent in a double aspect; that is, the gift to the son is contingent, and the gift to the issue of the son is contingent.

I shall assume that it cannot be necessary to show, if both are contingent, that, if valid, they must necessarily suspend the absolute alienation of the subject of them, until the actual division of the residuary estate.

And I shall assume, that I have shown, that such suspension would be illegal.

It follows that these contingent alternative executory gifts, or limitations, must be declared void; void in their creation.

(See the provision of the Revised Statutes and the cases before referred to.)

Of course, all that has been said of the contingent alternative executory gifts to the testator's son, Edward Augustus, and his issue applies to the contingent alternative executory gifts to his other son, and his issue.

The ulterior or executory dispositions of the other half of the residuary estate, on and after the directed actual division, I think, are also all contingent, and therefore invalid and void; void in their creation.

If the daughters survive the division, their shares or parts, are to pass under a new active trust for their lives, and contingently afterward for the minority of issue.

If either daughter dies before the division, leaving issue, I have already said in substance, that I cannot find words or provisions expressly or impliedly giving any vested estate, interest or right to such issue, on the death of the daughter so dying, or before the division.

In default of issue of either daughter, the two twelfth parts disposed of contingently in the first instance, for her and her issue, are to go to the heirs-at-law of the testator.

But either daughter might die without issue, before or after the division.

The provisions relating to the executory dispositions of the half of the residuary estate, intended contingently for the benefit of the daughters and their issue, are complicated and perplexing.

As the result of a careful consideration of them and of the general evident scheme of the sixteenth clause of the will, I must say, I do not think, that the testator intended, if either daughter died before the division without issue, that the testator's heirs-at-law should on her death, and before the division, take any vested estate or interest in the two twelfth parts dis

posed of contingently in the first instance, for the benefit of such daughter and her issue.

The scheme of the sixteenth clause of the will is, for the executors as trustees, on the testator's death, to take, hold, and carry the *corpus* of the residuary estate with its accumulations, and the testator's estate and interest in the *corpus* of the residuary estate, till the directed actual division should take place.

And this scheme is evidently inconsistent with an intention that any one other than the trustees, should take or have under the will a vested estate or interest therein before such division should take place.

Had undivided estates or interests in the residuary estate, been so limited on the death of the widow, as to *then* vest, such estates or interests, though undivided, would of course have been alienable on their so vesting; and the subsequent trust powers, or directions as to the appraisal, division, conveying &c., might have been viewed as trust powers for partition, not calling for any estate or interest in the trustees; the validity or execution of which, as such, could not have suspended or affected the alienability of the residuary estate.

But considering that the executory dispositions are of twelfths of the aggregate of the *appraisals,* and yet as to the realty, dispositions of parts or pieces thereof specifically by description at their appraised value, which realty, thus specifically disposed of, is expressly excepted from the trust power of sale, it would seem that it might have been a difficult task to have so worded these dispositions, *retaining the character or description of the subjects of them,* as to have allowed vested estates or interests under them before the actual division.

I hesitated in suggesting further, that the event, that is the actual division of the residuary estate as directed by the testator, on which the executory dispositions are limited, is also contingent, inasmuch as the surrogate of the county of New York might decline to choose an appraiser, and the testator could not impose upon the surrogate a private trust duty out-

side of his official duties, the performance of which could be enforced; but I really do not now see any answer to the suggestion.

Of course, if the *event* on which the executory dispositions are limited is contingent, they cannot vest until the contingent event happens, and the absolute inalienability of the residuary estate must be suspended until the contingency happens.

I assume, it does not necessarily follow from the invalidity and voidness of all the intended ulterior or executory dispositions of the residuary estate, or from the invalidity *pro tanto* of the trust as vesting the residuary estate in the trustees, to hold and carry under the trust after the death of the widow, till the directed division of it might actually take place, that what may be called the first part of the trust scheme, during the lifetime of the widow, either cannot be, or should be, sustained for such purpose or purposes of it, as may be lawful.

It is conceded, that the express trust for the accumulation of one-half of the surplus income, after the payment of certain legacies during the life of the widow, is unlawful and void.

But I think the first part of the trust scheme impliedly calls for the accumulation of much more of the income in certain contingencies.

The annuities of $1,500 each, payable to the testator's children out of the income, are payable in terms *during the life of the widow;* not during the life of the child.

So also the eighteenth parts of one-half of the surplus income after the payment of the annuities and certain other legacies, payable to the children, are payable during the life of the widow, and not during the life of the child.

All the children (at the time of the execution of the will or of the death of the testator), might and probably would survive the widow; and if they should, their annuities and parts of the surplus income, would have been paid to them, during the life of the widow.

But all the testator's children might die before the widow,

each leaving issue, or neither leaving issue. In case of either of the testator's children dying before the widow, leaving issue, I find nothing in the will expressly or impliedly authorizing the payment to such issue, or to any one for such issue thereafter till the death of the widow, of the annuity and parts of the surplus income which the child so dying, leaving issue, would have received, had he or she survived the widow. Nor in case of either child of the testator dying before the widow, without leaving issue, do I find anything in the will expressly or impliedly authorizing the payment to the surviving widow and children, or any or either of them, or any one else, thereafter, till the death of the widow, of the annuity and parts of surplus income, which such child so dying without issue, would have received, had he or she survived the widow.

I think it fair to infer, considering the whole trust scheme, that the testator intended and expected, if either of his children died before his widow, leaving issue, or without leaving issue, that the ceasing thereby of the payment of his or her annuity and parts of the surplus income, should and would increase the surplus income annually thereafter till the death of the widow, for accumulation, by precisely the amount of income, which, as annuity, &c., he or she would have received annually, had he or she survived the widow.

It follows, if the trust is valid as vesting in the trustees the residuary estate till the death of the widow, as all the testator's children may die before the widow, and as the testator's mother is dead, that the trust may become a trust for receiving annually the income of the residuary estate (now probably $100,000 or over), for the purpose of paying thereout to the widow the annuity of $8,000, and six eighteenth parts of one-half the surplus after paying her annuity, and for paying the remainder of the income to whoever might be entitled to it on the theory that the testator had not made any valid testamentary disposition of it; for it could not lawfully be accumulated under the express and implied trusts for accumulation; nor could it go under the provision of the Revised

Statutes (1 R. S., 726, § 40), the intended ulterior and execu-
tory dispositions of the residuary estate, and of its intended
accumulations being invalid and void, and there being no per-
son or persons, *under or by the will*, entitled to any " eventual
estate " in the subject of the trust.

Again, had the testator expressly provided in case of the
death of either child before his widow leaving issue, that the
trustees should apply to the education or support of such
issue, or pay over to such issue, thereafter, till the death of the
widow, the like annuity and parts of one-half of the surplus
income, the child so dying had received, or was to receive, it
would have been impossible to say, that the trust as to such
issue, was authorized and valid.

It is impossible to say, that the Revised Statutes authorize
an express active trust of real estate vesting an estate in the
trustee, to receive the rents and profits of lands, and apply
them to the education or support of A. B., or to pay them
over to A. B. during the life of C. D., and in case of A. B.'s
death, leaving issue living, C. D. to apply the rents and profits
to the education or support of such issue, or to pay them
over to such issue, till the death of C. D.

The words of the provision of the Revised Statutes are:
" To receive the rents and profits of lands, and apply them to
the education and support, or either, of any person during
the life of such person, or for any shorter term, subject," &c.

The words " any person" mean one person, as the subse-
quent words " such person" conclusively show; and the words
" during the life of such person or for any shorter term,"
mean during the life of such person or for any shorter term,
which must expire within the life of such person.

To hold that the words " of any person during the life of
such person or for any shorter term," mean of such person,
and of any number of issue of such person, during the life of
*another person*, would be taking greater judicial liberty with
the words and plain meaning of the provision than I am
willing to take or sanction. An express active trust of real
estate may be invalid and void by the Revised Statutes,

though it may not, if valid, unlawfully suspend the absolute alienation of the subject of it.   This proposition, the truth of which is so palpably and conclusively shown by several sections or provisions of the Revised Statutes relating to trusts of real estate, as not to permit without just cause of rebuke, a suggestion to the contrary, would seem accidentally to have been overlooked in one or more reported cases.  (See *Gilman* v. *Reddington*, 24 N. Y. R., 9.)

It is even difficult to say, that the trust to receive, &c., and to apply, or pay over, &c., is valid as to the testator's children.

The provision of the Revised Statutes evidently means, that the life or shorter term during which the rents, &c., may be received and applied, or paid over, shall be the life of the beneficiary, or a shorter term than *his or her* life. (*Downing* v. *Marshall*, 23 N. Y. R., 377.)

The trust in question as to the testator's children, is in effect, to receive, &c., and to pay over, &c., during the life of the widow, or for a shorter term than her life; for as to such of the children of the testator as survive the widow, the rents, &c., will have been received, &c., during the life of the widow, and as to such of the children as do not survive the widow, the rents, &c., will have been received, &c., for a shorter term than the life of the widow.

I assume that the purpose of the trust as to the widow is lawful and authorized, and I do not say that the purpose of the trust as to the testator's children is unlawful and unauthorized; but whether it is or not, considering the contingencies and difficulties to which the feature of the trust scheme last considered exposes it, its intimate connection with the express and implied purposes of unlawful accumulations, the impossibility of saying that the trustees, as such under the trust, as a trust vesting in them the whole residuary estate during the life of the widow, can lawfully hold the whole of it, and receive the income of the whole of it, for the purpose of paying over a small part of the income to the testator's widow and children under the trust scheme, and the balance of it to

the testator's heirs-at-law, and next of kin as undisposed of by him; and considering, also, the intended entirety of the *corpus* of the residuary estate during the life of the widow, and until the directed division of it with its accumulations, and the impossibility, in this case, without the exercise of arbitrary discretion, of determining as to what part or how much of the residuary estate the trust scheme shall be deemed valid as vesting an estate in the trustees as such, *pro tanto* for the lawful purposes of the trust during the life of the widow; and considering the invalidity and voidness of the ulterior and executory dispositions of the residuary estate with its accumulations, with a view to which ulterior and executory dispositions, it is to be presumed the first part of the trust scheme during the life of the widow, with its express and implied trusts for accumulations of income was framed; I think the trust scheme should not be sustained as vesting in the trustees, as such, the residuary estate, or any part or portion of it, or any estate or interest in it, for any or either of the declared purposes of the scheme during the life of the widow; and the ulterior and executory dispositions being invalid and void, and the law not allowing the trustees to hold and carry the residuary estate from and after the death of the widow, under the trust as vesting it in them till the division for the purpose of dividing and conveying and transferring it as directed, as I think I have before shown; it follows, that my conclusion is and must be, that the testator died intestate as to his residuary estate, which he intended to dispose of by the sixteenth clause of his will, and without having made any valid testamentary disposition thereof, or of its accumulations, except so far and in such particulars as the intended dispositions and purposes of the sixteenth clause of the will can and should be carried out through or by the execution of the trust's directions or powers, viewed only as powers in trust.

The ulterior and executory dispositions on the directed division being void, the preliminary directed appraisal and the directed actual division, and the execution of the con-

veyances, or transfers, directed thereon, would be idle cere-
monies for aught I can see. The conveyances, or transfers,
if executed under the direction or power to convey, viewed as
a power in trust, could give or convey no estate or interest,
certainly as to the real estate, to the grantees or transferees *as
such.* Moreover, if one is permitted to suppose what could
not be, that such grantees or transferees could and would take
the residuary estate under conveyances or transfers, made
under the power or direction to convey, &c., viewed as a
power in trust, as grantees or transferees under the convey-
ances or transfers, and not as devisees and legatees under the
will, I do not see but the power to convey, viewed as a power
in trust, would suspend the absolute alienation of the residuary
estate till the actual division of it, and be void, as a power in
trust, for that reason.

The power to sell and convey the house and lot, and stable
and lot, given to the widow for life, was given for the purpose
of having the proceeds of the sales divided, transferred and
disposed of with the other residuary property. As the pur-
pose cannot be carried out, but fails, the power should fall
or fail.

I need not, probably say, that as to the residuary real estate,
to hold, though the testator did not succeed in or by the six-
teenth clause of his will in vesting in the trustees, as such, the
residuary estate, or any estate or interest therein, yet that they
might collect and receive the rents and income of the residuary
estate, and pay them over or apply them so far as they law-
fully could, under or according to trust scheme under trust
to receive, &c., and to pay over, &c., as powers in trust, would
be inconsistent with the purpose and policy of the provisions
of the Revised Statutes authorizing and regulating certain
express and active trusts of real estate, and abolishing all other
trusts of real estate vesting an estate in the trustees.

Lord COKE says: "What is land but the rents and profits
thereof?" It has over and over again been held that a devise
of the rents and profits of land is a devise of the land itself.
It would defeat the purpose of the provisions of the Revised

Statutes referred to, to hold that under a trust scheme like this, the trustees could collect and receive, and pay over the rents, profits, &c., on the theory that the naked legal title, or legal estate in fee, descended to the heirs-at-law without the rents, issues, and profits, leaving them to be collected and received, and paid over under the trust powers or directions, viewed as powers in trust.

The power to let or lease, during the life of the widow, any part of the residuary real estate for terms not exceeding five years, and the power to sell any of such real estate *not specifically devised in the sixteenth clause*, and other trust directions and powers relating to the management of the trust property, its insurance, repairs, the payment of taxes, assessments, &c., were all plainly given as auxiliary, or subsidiary, to the trust scheme as vesting an estate in the trustees, as such, with a view to the ulterior dispositions, and should fail or fall, with the scheme as vesting such estate, and with the ulterior dispositions.

The mother of the testator is dead, and it is presumed that the legacies given in the thirteenth, fourteenth and fifteenth clauses of the will have been paid. But neither the mother's annuity, nor these legacies, though directed to be paid out of the trust income of a certain part of the testator's estate (that is the residuary), would have abated or failed in consequence of the failure of the trust fund or income out of which they were payable. Notwithstanding the failure of the directions to pay them out of the income of a certain part or portion of the testator's estate, they could and would have been viewed as general pecuniary legacies, and as such payable out of the general assets, in the hands of the executors, as executors.

So also, I think, the bequest to the treasurer of Yale College, in the sixteenth clause of the will, though expressly payable out of the trust residuary estate, on the death of the widow, does not abate by the failure of the trust scheme, and may (if otherwise valid), be viewed as a general pecuniary legacy, and paid, or its payment, on the death of the widow

may be provided for, out of the general assets. ( *Walton* v.
*Walton,* 7 John. Ch., 258 ; 2 Williams' Executors, 839, 1046,
and cases cited ; *Boys* v. *Williams* 2 Russ. and M., 689 ;
*Giddings* v. *Seward,* 16 N. Y., 367; Shep. Touchstone. 433 ;
Amb., 310 ; 4 Ves., 565 ; 3 Ves. and Bea., 5.)

So also, I think, the taxes and assessments, of or on the
premises given to the widow for life, should and can be paid
(or their payment provided for) by the executors, as execu-
tors, out of the general assets, nothwithstanding the failure
of the trust scheme, and of the trust fund, out of which they
are directed to be paid.

But this cannot be said of the annuities and further gifts
out of the income of the trust residuary estate to the child-
ren and widow, during the life of the widow. These can-
not be viewed and paid as general pecuniary legacies, out of
the general assets ; for it must be presumed that they were
given on the theory, that the testator supposed he was making,
by the sixteenth clause of his will, valid dispositions of all
residuary estate, and it cannot be supposed that he would,
in view of the results of his not making by that clause of
his will a valid disposition of any part of it, have made these
provisions for his widow and children.

From the views which have been expressed, it follows that
the testator should be deemed to have died intestate as to
his residuary estate, real and personal, and its accumulations
of income, and without having made any valid testamentary
disposition thereof, or of any part or portion thereof, in or by
the sixteenth clause of his will, otherwise than as the payment
of legacies or moneys directed to be paid in that clause, which
may be viewed as general pecuniary legacies, and paid as such
out of the residuary personalty, viewed as assets, vested in the
executors as such, for administration, may be regarded as dis-
positions by that clause, of portions of the residuary person-
alty ; and that the rights, estates or interests of the parties
to these actions, to or in the residuary estate, and its accumu-
lations of income, should be declared and adjudged to be on

the theory that the testator did die intestate, as to the residuary estate and its accumulations.

As the annuity to the widow abates, any election she may have made, to take the provisions of the will for her, in lieu of dower, should not impair or affect her right to dower in the residuary real estate.

I understand that the laws of the domicil of the testator, control his testamentary dispositions of personal property, and that in cases of intestacy, the laws of the domicil of the intestate, declare the succession, and right of succession to his undisposed of personal property, and that the "*lex rei sitæ*" controls testamentary dispositions of real estate, and declares and regulates the succession, and right of succession to it in cases of intestacy.

It follows, that the share of the residuary estate, real and personal, and of its accumulations of income (assuming all the residuary real estate to be in this State) which Mrs. Lockwood was entitled to, on the theory aforesaid, was by the laws of this State; that the rights, estates, or interests of her children, as her heirs-at-law, and of Mr. Lockwood, as her surviving husband, in or to her share of the residuary real estate, are, by the laws of this State; that the property, rights and interests of her children, as her next of kin, or otherwise, and of Mr. Lockwood, as her surviving husband, or otherwise, to or in her share of the residuary personal property, are by the laws of Connecticut.

But Mr. Lockwood's right to reduce into his possession his late wife's share of residuary personal estate, as being her administrator by New York letters of administration, and as such right could only be enforced by him, as such administrator, through the New York courts; and as he is a party to these actions as such administrator, and sole plaintiff in one of them, as such, which may be viewed as in part to enforce such right of reduction, as such administrator, and as the law of Connecticut is in proof, showing that by such law he is entitled only to the use, interest and profits of his late wife's share of the residuary personal estate during his life, and that on his

death, her children will be entitled to the principal of it absolutely, I am not willing to say, that the judgment in these actions should not provide for securing to her children their future rights in or to the principal of her share of the residuary personal estate, before it shall be transferred or paid over to him, as such New York administrator. I think such security may be required, without violating any established principle of comity between States.

So far as I have knowledge of recent legislation, the rights, estates and interests of Mrs Lockwood's children, as her heirs, and of Mr. Lockwood, as her surviving husband, in or to her share of the residuary real estate, are by the general provisions of the Revised Statutes regulating descents, and the act of March 20, 1860. (Laws of 1860, 159, § 11.) What their rights may be before the legislature adjourns, no one can tell.

So much of the accumulations of income as came from the residuary real estate, should be regarded and treated as real estate; and so much of the accumulations of income as came from the residuary personal property, should be regarded and treated as personalty.

The proceeds, and investments of proceeds, in the hands of the executors resulting from sales of residuary real estate under the power of sale, in the sixteenth clause of the will, should be regarded and treated as real estate.

The legacy of $5,000 to the treasurer, for the time being of Yale College, on the death of the widow, viewed as a general pecuniary legacy, payable out of the assets generally, though the trust scheme fails, I think is valid, so far as that the direction to pay the money to the treasurer, &c., can, and ought to be complied with. Whether the fund can be administered, and the interest of it accumulated, as directed by the testator, for the purpose specified by him, I shall regard as a question for the courts of Connecticut. If they shall determine that the fund cannot be so administered, and the interest accumulated by the laws of Connecticut, it is to be presumed that they will direct the fund to be paid over to whoever, under the circumstances, may be entitled to it.

The gifts of certain real estate to the two sons and their issue, by the sixth clause of the will (except so far as revoked by the codicil, as to a part or portion of the subject of the gifts), is valid.

So, also, is the gift of certain real estate to the three daughters and their issue, by the first item of the codicil.

So, also, is the devise to testator's two sons and his grandson, of certain real estate by the second item of the codicil.

I am not aware of any question presented by the appeals, which has not been passed upon.

I have not been able to see that *Amory* v. *Lord*, or *Harrison* v. *Harrison*, have much, if anything, to do with the questions relating to the sixteenth clause of the will, or with the question, whether the trust scheme, or any part of it, can or should be sustained.

The views above expressed call for very material and extensive modifications of the judgment of the Special Term.

The order or judgment of the General Term modifying that judgment, according to the views expressed in this opinion, may be drawn by the guardian *ad litem* for the minor children of Mrs. Lockwood, or by either of the counsel for the testator's daughters, and settled on notice.

The costs of all parties on this appeal should be paid by the executors, out of the accumulations of income.

I think it right to say in conclusion, that this will was evidently drawn by an intelligent lawyer, who had read the Revised Statutes, and knew the meaning of words, for a persistent client, who was determined to have his own way, by paying for it; and though the examination of the questions relating to the sixteenth clause of the will, has cost me some labor, yet I have the charity to wish, if the lawyer who penned and worded the sixteenth clause of this will, should ever pen or word another like it, that it may never be his judicial duty, to say whether it, or any part of it, is valid, under or by the Revised Statutes.